IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


RICHARD L. STEARNS-MILLER, #126563,
      Plaintiff,

vs.                                    Case No.:  5:09cv215/RS/EMT

STATE OF FLORIDA, et al.,
      Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

      Plaintiff, a prisoner proceeding pro se, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1).  Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. 10) and an amended complaint (Doc. 17).

      Plaintiff, an inmate of the Florida Department of Corrections (FDOC), names the State of Florida, the FDOC, and numerous unidentified and identified employees of the FDOC as Defendants.  The following factual allegations are taken from Plaintiff's verified original complaint, his verified affidavit submitted with his complaint, and his verified amended complaint (*see* Docs. 1, 17).  Plaintiff states he is sixty-one (61) years old and suffers from several medical conditions, including Hepatitis B and C, sleep apnea, spinal stenosis, osteoarthritis and degenerative disc disease, legal blindness, COPD, bronchitis, and the herpes virus.  He states he also has "classic symptoms" of "non-small cell lung cancer," though he has not been diagnosed with this disease. Plaintiff states that during his incarceration over the past five years (from December of 2004 to the present), correctional officials at all of the institutions where he has been confined, including the Reception Medical Center, Walton Correctional Institution (Walton CI), Santa Rosa Correctional Institution (Santa Rosa CI), Washington Correctional Institution (Washington CI), and Gulf Correctional Institution (Gulf CI), have not provided adequate medical treatment for his conditions.

Plaintiff states he has been suffering from Hepatitis C since approximately 1973, but prison officials have not provided medical treatment "recognized by the medical community" for his condition, including proper nutrition and sleep, and prescriptions for "Pegatron," Riboflavin, or Interferon. He further states officials have denied him medical care "recognized by medical professionals" for herpes, with which he has been infected since 1976. Plaintiff states studies have conclusively shown that herpes destroys large portions of brain cells in later stages of life, resulting in "dysfunction."

Plaintiff additionally states officials have either denied him use of "continuous positive air pressure (CPAP)" machines and humidifiers or provided him "inferior or discriminatory services" with regard to his sleep apnea, even though use of such equipment was recommended by a physician prior to Plaintiff's custody in the FDOC. He states that on four occasions during the past three years, prison officials delegated the handling and transportation of four new CPAP machines, one humidifier, and three masks to security officers, which resulted in these devices being damaged or destroyed. These security officers have also lost or stolen four CPAP totebags, which Plaintiff used to maintain the hygiene and safety of CPAP equipment and for non-medical personal use. Plaintiff states that in March of 2009, the Senior Health Services Administrator with the FDOC ordered a Remstar Pro III humidifier for Plaintiff's use, but it has not arrived, thus forcing Plaintiff to use an inadequate, damaged humidifier. He additionally states that during the past five years, he has been denied "equal access" to 120 volt electrical wall outlets at Walton CI, Washington CI, and Gulf CI, which were essential to his "disability equipment."

Plaintiff states officials have also denied him "palliative appropriate pain management pharmacy drug treatment relief" for severe, constant pain in his spine.[1] He states prison officials have refused to obtain his medical records from various "teaching hospitals" where he received medical care for his "spinal injuries or abnormalities" prior to his incarceration, and officials have disputed, minimized, and disregarded medical advice and discharge information from those hospitals. Plaintiff further states that on three occasions since December of 2004, prison officials

---

[1]Plaintiff states in one of his filings that his spinal injury was caused by his participation in recreational auto racing for ten years (*see* Doc. 26 at 2), an activity which he engaged in several years prior to his incarceration in the FDOC.

have confiscated his cervical collars that were issued to him by Dr. Gama, a neurosurgeon under contract with the FDOC.  He states his mobility problem was exacerbated by a shoulder injury, but officials refused to provide mobility assistance.  Plaintiff alleges that over the past five years, FDOC officials have sometimes assigned him to cells for 23–24 hours a day that are too small to permit him to turn his wheelchair and also deprived him of access to the shower and toilet, causing him to soil himself.  At other times, officials have refused him use of a wheelchair in his cell, thus requiring him to crawl on the cell floor and causing him to suffer frequent falls when attempting to access "facilities," causing further injury to his spine, shoulder, head, and knees.  Plaintiff acknowledges that officials have designated the first toilet stall in the dormitory as "handicapped," but he suggests this does not provide him adequate access to the toilet because there is no sign on the stall designating it "Wheelchair Use Only," and all inmates are required to use only the first three toilet stalls after "lights out."  He also alleges officials encourage inmates who smoke to do so in the toilet stalls, which renders the stalls inaccessible for hours before and after meal times, count periods, and "lights out."  Plaintiff states this has exposed him to second hand smoke and caused him to experience "smoker's cough," breathing difficulties, and discharge from his lungs which appears to be "tissue matter."  Plaintiff also complains that FDOC officials have assigned him to the lower bunk of a double bunk instead of a single bunk, and this has caused him to injure his neck and incur cuts on his scalp while attempting to transfer to and from his wheelchair into his lower bunk. Plaintiff states he required "emergency medical care" and a tetanus shot for these injuries.

Plaintiff further states that during this time FDOC officials have denied him any medical care for chronic obstructive pulmonary disease (COPD), bronchitis, asthma (compounded by "sinus maxial facial injuries"), a history of sudden acute respiratory syndrome (SARS), and an intolerance to chemicals.

Plaintiff also states he suffers from a thyroid disease, and officers at Gulf CI often allow him less than five minutes to eat, which is insufficient time to consume his food.

Plaintiff states that officials at all five of the identified correctional institutions where he has been incarcerated "forced" him, by verbally threatening him with physical force, to sustain spinal, head, and shoulder injuries by forcing him to perform duties as a houseman which were beyond his physical capabilities.  He states that although his work assignment as a houseman was medically

approved, he was assigned duties which required him to bend, push, pull, lift, and reach from his wheelchair, even though he had medical passes limiting such activities.

Plaintiff further states security officers have ignored, destroyed, or cancelled medical passes for no lifting or bending, solo bunk only (no bunk overhead), keylock pass, and a pass for a "talking book player." Security officers have also confiscated and disposed of his medications "at inventory," thus causing Plaintiff to increase sick-call visits, re-order prescriptions, and incur financial costs.

Plaintiff states Dr. Norma Gilo, a medical doctor at Gulf CI, is widely known for providing substandard medical care. He states she has been sued on numerous occasions but claims to have never lost a case. He asserts Dr. Gilo has caused many nurses to transfer to other institutions or terminate their employment, and her substandard practices have often resulted in death and disregard for legitimate medical complaints by inmates. Plaintiff states that during the past year, Dr. Gilo has told him that there is nothing wrong with his spinal vertebrae, he simply has arthritis, yet since July 24, 2009 (one month prior to Plaintiff's filing his amended complaint), he has been placed in the infirmary and forced to lie flat on a backboard for twenty-three hours, sit on a board for one hour, and crawl on the floor, with no access to a shower. Plaintiff also states Dr. Gilo has refused to assign him an inmate assistant.

In addition to Plaintiff's claims of inadequate medical care, he claims he has been denied access to FDOC services, programs, and activities solely because of his disabilities. He states the following are inaccessible to his wheelchair: dining hall tables, dormitory entrance doors, emergency egress, recreation yard, recreation yard restroom, chapel, library, classrooms, dormitory locker, bed space, and safe and hygienic restrooms. He states he has often been forced to "pop a wheelie" over doorway thresholds, which sometimes causes his wheelchair to tip over. He states he was singled out to work 7:00 a.m. to 3:00 p.m., five days per week, because of his disability, and this has prevented him from participating in religious studies, college classes, and chapel and religious worship services.

Plaintiff additionally alleges prison officials have on multiple occasions since December of 2004, used or conspired to use force or threats of force to interfere with the "free exercise of [his] civil rights" because of his religion and age, and on two occasions he was assaulted and battered.

In another unrelated claim, Plaintiff alleges that since December of 2004, officials have denied him the right to freely exercise his religion by refusing to permit him to listen to audio cassette Bible "talking book services."

Also during this time, officials have interfered with his right to access the courts and his right to free speech by failing to process over two hundred pieces of mail directed to courts, federal and state governments, "justice department lawyers," special agents of the FBI, private sector lawyers, news media officials, publishers of legal material, clergymen, and family members. Plaintiff states this has resulted in his experiencing financial losses and dismissals of court cases. Prison officials have also destroyed Plaintiff's personal property, including legal treatises, medical forensic treatises, and over 1,300 pages of the transcript of his criminal trial by requiring him to store them in laundry bags or plastic trash bags, which caused them to become crushed and soiled, when reasonable alternative storage methods were available. Plaintiff states that from 2005–2007, prison officials embezzled $500.00 from his inmate trust fund account by obstructing his purchases of legal treatises.

Plaintiff claims the afore-described conduct by prison officials violates the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1993, the Civil Rights of Institutionalized Persons Act, the Religious the Religious Land Use and Institutionalized Persons Act of 2000, the First, Fifth, Eighth, and Fourteenth Amendments, and various provisions of Florida law. As relief, he seeks an injunction enjoining prison officials from physically abusing and retaliating against him, and prohibiting officials from denying him equal access to and participation in prison facilities, services, and programs. He also seeks monetary damages and costs incurred in bringing this action.

Pursuant to the "three strikes" provision:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

According to the docket of another case filed by Plaintiff in this court, <u>Stearnsmiller v. McDonough</u>, Case No. 4:05cv421/MMP/AK, the United States Court of Appeals for the Eleventh Circuit has determined that Plaintiff is a "three striker" under § 1915(g). *See id.*, Doc. 37 (attached). Therefore, Plaintiff is prohibited from proceeding in forma pauperis in the instant civil action unless he qualifies under the "imminent danger of serious physical injury" exception.

Circuit court cases have been helpful in determining what a prisoner with three strikes must show in order to be allowed to proceed in forma pauperis. According to the Eleventh Circuit, in <u>Brown v. Johnson</u>, 387 F.3d 1344, 1350 (11th Cir. 2004), "the issue is whether [the] complaint, as a whole, alleges imminent danger of serious physical injury." Accordingly, when determining whether a plaintiff has met his burden of proving that he is in imminent danger of serious physical injury, the court must look to the complaint, which must be construed liberally and the allegations of which must be accepted as true. *See id.*; <u>Jackson v. Reese</u>, 608 F.2d 159, 160 (5th Cir. 1979); <u>McAlphin v. Toney</u>, 281 F.3d 709, 710 (8th Cir. 2002). General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g). *See* <u>Martin v. Shelton</u>, 319 F.3d 1048, 1050 (8th Cir. 2003). The plaintiff must allege and provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury," *id.*, and vague allegations of harm and unspecific references to injury are insufficient. <u>White v. State of Colorado</u>, 157 F.3d 1226, 1231 (10th Cir. 1998). A claim by a prisoner that he faced a past imminent danger is an insufficient basis to allow him to proceed in forma pauperis pursuant to the imminent danger exception. <u>Medberry v. Butler</u>, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding that exception not triggered where threat of assault by other prisoners ceased to exist when plaintiff was placed in administrative confinement prior to filing of his complaint); *see also* <u>Lewis v. Sullivan</u>, 279 F.3d 526, 531 (7th Cir. 2002) (holding that "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate."). Moreover, "imminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed. *See* <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 213 (3d Cir. 2001).

The Eleventh Circuit decision in Brown v. Johnson, the only published case in this circuit interpreting the imminent danger except as it relates to a prisoner with disabilities and ongoing medical conditions, is particularly relevant to the inquiry in the instant case. In Brown, the prisoner alleged that he had HIV and hepatitis but was prevented from continuing to take prescribed treatments. As a result, he suffered prolonged skin and scalp infections, severe pain in the eyes and vision problems, fatigue, and prolonged stomach pains and was at risk for "opportunistic infections, such as pneumonia, esophageal candidiasis, salmonella, and wasting syndrome." 387 F.3d at 1350. The Eleventh Circuit determined that the inmate's allegations that a total withdrawal of treatment for serious diseases would cause him to suffer severe ongoing complications, increased susceptibility to various illnesses, and a rapid deterioration of his condition were sufficient to constitute imminent danger of serious physical injury. *Id.*

Here, initially, Plaintiff's allegations concerning the conditions of his confinement which are unrelated to the alleged deprivation of medical care, including claims of denial of access to legal documents and the courts, destruction and theft of personal property, interference with his mail, denial of access to religious and educational services (including "talking book" library services), disclosure of confidential medical information to other inmates, and harassment by security officers, do not pose an imminent danger of any physical injury. Additionally, Plaintiff's specific allegations of physical injury, and those that are relevant to the issue of whether he is in imminent danger of serious physical harm, concern his confinement at Gulf CI, the institution where he was housed from September of 2008 through the date he filed his amended complaint in this action (*see* Doc. 1, "Verified Affidavit of Plaintiff, Specific Systemic Pattern or Practice of Discrimination by Defendants" ¶ 1; Doc. 11; Doc. 17). The court notes however that according to the FDOC, Plaintiff was recently transferred from Gulf CI to the Reception Medical Center, and as of November 15, 2009, remained incarcerated there. *See* http://www.dc.state.fl.us, Offender Information Search (inmate number 126563) (last searched November 15, 209). Therefore, any risk of serious physical injury posed by the conditions and conduct of personnel at GCI no longer exists. *See, e.g.*, Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999).

Furthermore, although Plaintiff generally alleges that officials at all of the institutions in which he has been housed over the past five years, including the Reception Medical Center, have

failed to provide adequate medical treatment, he does not include any specific allegations suggesting that the conditions at the Reception Medical Center were such that he faced imminent danger of serious physical injury, or that his current confinement there is under such circumstances.[2] Moreover, unlike the prisoner in Brown, Plaintiff's allegations do not suggest that his medical condition is rapidly deteriorating or that he has suffered any sort of illness or infection as a result of the alleged denial of adequate treatment for his various medical conditions. Because the facts do not suggest that Plaintiff's current conditions of confinement pose an imminent threat of serious physical injury, he does qualify under the imminent danger exception to § 1915(g). Accordingly, he may not proceed in forma pauperis. A prisoner who is no longer entitled to proceed in forma pauperis must pay the filing fee at the time he initiates the suit, and failure to do so warrants dismissal without prejudice. Dupree v. Palmer, 284 F.3d 1234 (11th Cir. 2002); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001).

Accordingly, it is **ORDERED**:

The Report and Recommendation previously issued by the undersigned (Doc. 15) is hereby **VACATED**.

And it is respectfully **RECOMMENDED**:

1.      That pursuant to 28 U.S.C. § 1915(g), this cause be **DISMISSED without prejudice** to Plaintiff's initiating a new cause of action accompanied by payment of the $350.00 filing fee in its entirety.

2.      That all pending motions be **DENIED as moot**.

At Pensacola, Florida, this 16th day of November 2009.

---

[2] In a document titled "Petition for Declaratory Judgment Decree," filed after Plaintiff's amended complaint and before he was transferred to the Reception Medical Center, Plaintiff alleged that the continuous physical and psychological abuses he has suffered over the past five years show that a substantial risk of harm is imminent because he faces a serious risk of death or paralysis due to his "degenerated" spinal condition coupled with his age and weakness from advanced Hepatitis (see Doc. 26 at 4). Plaintiff additionally asserted that sleep apnea is known to be potentially fatal, and delaying or withholding properly functioning CPAP equipment is life threatening because it could cause cardiac arrest or strokes "that often lead to silent death in the night" (id. at 5–6). None of these allegations are sufficiently specific to show that he is at imminent risk of serious physical injury at the Reception and Medical Center, his current institution. Additionally, with regard to Plaintiff's respiratory issues, he acknowledges in one of his filings that he received "respiratory therapy" when he was previously housed at the Reception Medical Center, which suggests that treatment for his respiratory condition is available and has been previously provided to him at that institution (see Doc. 11 at 7).

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

        Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).